UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CIVIL ACTION NO. 0:04-cv-165-HRW

EDWIN L. and MARY A. CLEMMER,                                    PLAINTIFFS,

v.         **MEMORANDUM OPINION AND ORDER**

ROWAN WATER, INC.,                                               DEFENDANT.

This matter is before the Court upon the Defendant's Motion to Dismiss for Lack of Jurisdiction, or in the alternative, to Dismiss Counts 1 and 2 of the Complaint [Record No. 11]. The Court, having reviewed the record and being otherwise sufficiently advised, hereby sustains the Defendant's Motion to Dismiss for Lack of Jurisdiction.

This is a diversity case arising from the alleged trespass and nuisance of three water lines constructed by the Defendant, Rowan Water, Inc. ("Rowan Water") on the Plaintiffs' property. The Plaintiffs further allege that Rowan Water committed fraud in obtaining an easement from Plaintiffs to install one of the water lines.

Before the Court is the Defendant's Motion to Dismiss, wherein it claims that Plaintiffs' claims are insufficient to meet the amount in controversy requirement of 28 U.S.C. Section 1332(a), and/or that Plaintiffs' complaint fails to

state a claim upon which relief can be granted under either a nuisance or trespass theory. In addressing the Defendant's motion, the Court has considered the parties' supplemental briefs addressing the issue of reverse condemnation and the effect of *Rockwell Int'l. Corp. v. Wilhite,* 143 S.W.3d 604 (Ky. App. 2004) on Plaintiffs' claims.

## I. FACTUAL BACKGROUND

Plaintiffs, Indiana residents, purchased three tracts of property in Rowan County, Kentucky, in 1971, 1977, and 1989. The property Plaintiffs purchased in 1977 adjoined the C&O, or CSX, railroad right-of-way, which ran along U.S. Highway 60 and was abandoned in 1985-86. By way of reversion, the Plaintiffs became the owners of the abandoned railroad right-of-way.

Plaintiffs brought this diversity action on September 13, 2004, alleging that they have been and continue to be damaged by the three water lines that Rowan Water constructed on their property. The three water lines in question are a 6-inch asbestos/cement water line constructed in 1969-1971; a 10-inch PVC water line constructed in the early 1990's; and an 8-inch PVC water line that was constructed in June 2001, but subsequently relocated in May 2004. While the location of the 6-inch and 10-inch water lines is uncertain, it is undisputed that those lines are not located on any of the three tracts purchased by the Clemmers. However, the

parties agree that those water lines are possibly located on the old railroad right-of-way which is owned by the Clemmers by way of reversion. The only water lines constructed since the abandoned railroad right-of-way reverted to the Clemmers are the 10-inch and 8-inch water line.

Originally, the 8-inch water line was to be located in a county road right-of-way, but Mr. Clemmer requested that Rowan Water relocate the line to the abandoned railroad right-of-way. Rowan Water agreed. In January 2001, Mr. Clemmer executed an easement in favor of Rowan Water for the installation of the proposed new 8-inch water line. Mr. Clemmer signed the easement, which was notarized, and then mailed it to Rowan Water. Mrs. Clemmer did not sign the easement, and Rowan Water never recorded the easement.

Rowan Water installed the 8-inch water line on the abandoned railroad right-of-way in June 2001, yet Mr. Clemmer claimed that the new 8-inch water line was not installed at the agreed upon location. Rowan Water maintains otherwise. Sometime in May 2004, when Mr. Clemmer continued to express dissatisfaction with the location of the water line, Rowan Water agreed to relocate the 8-inch water line onto the U.S. 60 Highway right-of-way. It returned the easement to the Clemmers around that time.

The Clemmers then filed this lawsuit. In Count One of their Complaint,

Plaintiffs allege that Rowan Water has trespassed and continues to trespass on their property. In Count Two, they allege that the 6-inch asbestos containing water line constitutes a nuisance to them and their property. Finally, in Count Three, they allege that Rowan Water committed fraud when it misrepresented the intended location of the 8-inch water line and improperly induced Mr. Clemmer to sign the water line easement.

On June 15, 2005, Rowan Water filed the instant Motion to Dismiss, wherein it contends that: (1) the Court lacks jurisdiction of this case because the amount in controversy does not exceed the sum of $75,000.00; (2) either part of the Plaintiffs' claims are barred by either K.R.S. § 413.120(4), the five year statute of limitations relating to trespass upon real property, or K.R.S. § 413.160, the ten year "catch all" statute of limitations; and (3) the Plaintiffs' nuisance claim with regard to the water line containing asbestos must fail because Plaintiffs have not actually sustained an injury from it.

At the Pre-Trial Conference on July 25, 2005, the Court requested that the parties brief the issue of reverse condemnation as well as the issues raised in *Rockwell Int'l v. Wilhite*, and the resultant effect of each on the $75,000.00 jurisdictional amount in controversy. Upon consideration of the parties' legal positions and for the reasons set forth more fully herein, the Court concludes that

the Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is warranted based upon the facts of this case.

**II. ANALYSIS**

The Defendant's primary argument is that the Court lacks jurisdiction because Plaintiffs' damages do not exceed the sum of $75,000.00, as required by 28 U.S.C. § 1332(a).[1] Specifically, Defendant argues that under *Witbeck v. Big Rivers Rural Electrical Coop. Corp.*, 412 S.W.2d 265 (Ky. 1965), this case must be treated as a case of reverse condemnation. Because *Witbeck* states that reverse condemnation is an exclusive remedy and limits recovery to the value of the property taken, Defendant argues that Plaintiffs cannot meet the jurisdictional amount of $75,000.

**A. Reverse Condemnation**

Federal courts must give state court judgments the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). When evaluating an undecided question of

---

[1]Defendant also argues alternative grounds of dismissal based on statutes of limitations as well as under theories articulated in *Rockwell v. Wilhite,* 143 S.W.3d 604 (Ky. App. 2004). Because the Court finds the reverse condemnation issue to be dispositive in that it divests this court of subject matter jurisdiction, a full discussion of these alternative arguments will be unnecessary.

Kentucky law, a federal court sitting diversity must make the "'best prediction, even in the absence of direct state precedent, of what the Kentucky Supreme Court would do if it were confronted with [the] question.'" *Combs v. International Ins. Co.*, 354 F.3d 568 (6th Cir. 2004), citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If the relevant state judiciary has not spoken to the issue, courts sitting in diversity should consider "all relevant data," *Kingsley Associates, Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995), including jurisprudence from other jurisdictions, *Lexington Insurance Co. v. Rugg & Knopp, Inc.,* 165 F.3d 1087, 1090 (7th Cir. 1999). "When given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path." *Id.*, citing *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994).

    Defendant cites *Witbeck v. Big Rivers Rural Electrical Coop. Corp.*, 412 S.W.2d 265 (Ky. 1965), in support of its argument that reverse condemnation is the sole remedy available to the Plaintiffs. In *Witbeck*, the Plaintiffs brought a claim for trespass and punitive damages resulting from an electric company's entry onto their property without an easement and without prior payment of compensation. *Id.* The Court in *Witbeck* decided that the case was a reverse condemnation case rather

than a trespass case, and as such, punitive damages could not be recovered:

> "The rule is that where an entity possessing the power of eminent domain prematurely enters upon the premises of the condemnee, the exclusive remedy of the landowners is based on Kentucky Constitution, Section 242, which provides that 'just compensation for property taken' shall be made. This remedy is frequently referred to as 'reverse condemnation.' (citations omitted). The measure of damages is the same as in condemnation cases. Separate recovery of punitive damages is prohibited." (citations omitted). *Id.* at 269.

According to Rowan Water, it is a utility that has condemning authority under K.R.S. § 416.340, which provides:

> "Any water association supplying water to no less than 100 customers, which has been formed under the provisions of KRS Chapter 273, may exercise the power of eminent domain in accordance with the provisions of the Eminent Domain Act of Kentucky."

By Plaintiffs own admission, Rowan Water is a water association which supplies water to more than 100 customers and was formed under the provisions of KRS Chapter 273. As such, KRS § 416.340 expressly grants Rowan Water the power of eminent domain.

Plaintiffs, however, argue that the doctrine of reverse condemnation does not apply in this matter because: (1) the Kentucky Eminent Domain Act, KRS §§ 416.540-.680, does not expressly refer to the doctrine; and (2) the doctrine applies

only to claims against the government.[2]  In support of this argument, Plaintiffs cite *Commonwealth, Natural Res. & Env'l Protection Cabinet v. Stearns Coal and Lumbar Co.*, 672 S.W.2d 378, 381 (1984) (stating that "[i]nverse condemnation is the term applied to a suit against a government to recover the fair market value of property which has in effect been taken and appropriated by the activities of the government when no eminent domain proceedings are used.")

According to Plaintiffs, reverse condemnation is the exclusive remedy for money-damages claims that the government has infringed upon property rights because the government otherwise has sovereign immunity from suit in the courts, an immunity not afforded to public utilities (citing *Keck v. Hafley*, 237 S.W.2d 527, 529 (Ky. 1951) (noting that "the State is not immune from suit if it fails to bring a condemnation proceeding, and the present suit is in effect a condemnation in reverse.") and *Cf. G&K Dairy v. Princeton Elec. Plant Bd.*, 781 F.Supp. 485, 488 (W.D. Ky. 1991)(finding a cause of action under a trespass claim for damage to a dairy herd caused by electric utility's stray voltage)).  Thus, Plaintiffs posit that because sovereign or governmental immunity is not an issue with respect to a

---

[2]Plaintiffs also argue that even if Defendant brings a condemnation claim, it is a prerequisite to the right to condemn under the Eminent Domain Act that the condemnor attempt to reach an agreement with the owner to acquire a right , privilege, or easement to use the property.  Plaintiffs maintain that Defendant never attempted to acquire from them any "property right, privilege, or easement" for the 10-inch or 6-inch lines.  The Court notes that Plaintiffs have cited no legal authority in support of their argument, and without any law to support this position, the argument is not well taken.

water utility such as Rowan Water, the Court has authority to enter judgment for trespass, nuisance, or fraud against the utility, and maintain that their claims do not have to proceed as a condemnation suit. Creative though Plaintiffs' argument may be, there is nothing in the case law to support their position.

Plaintiffs also maintain that *Witbeck* is distinguishable because it began as a statutory condemnation action by the RECC, and before the proceedings were concluded, the RECC's contractor entered onto the subject land. The owner sought punitive damages on a claim that the premature entry was a trespass, and the court limited the owner to remedies under the Eminent Domain Act. Plaintiffs take the position that the applicability and remedies available under the Act need not be debated unless Defendant brings a condemnation claim or counterclaim with respect to the water lines alleged to be on the Plaintiffs' property, which Rowan Water has not done.

Plaintiffs' arguments are without merit. As correctly pointed out by the Defendant, Plaintiffs' attempt to distinguish *Witbeck* solely because Defendant does not have sovereign or governmental immunity is unsupported by judicial authority. Specifically, the *Witbeck* Court applied reverse condemnation even though the utility in *Witbeck*, Big Rivers Rural Electric Coop. Corp, was a private utility without sovereign immunity. Moreover, the Court finds that the two

additional cases cited by the Defendant are instructive in this regard, specifically: *Kentucky & West Virginia Power Co. v. Vanhoose*, 174 S.W.2d 538 (Ky. 1943) and *Eversole v. Morgan Coal Co.*, 297 S.W.2d 51 (Ky. 1956).

In *Kentucky & West*, two landowners sued an electric company for trespass and punitive damages because the electric company built a power line across their property without compensating them. The Court determined that "...the only question after entry without first making payment being the value of the land taken, and the damages caused to the residue by reason of the taking" 174 S.W.2d at 539. In *Eversole*, the Court held that when a coal company deviated from a right-of-way which had been condemned over a surface owner's property, the case had to be treated as a condemnation case and the proper measure of damages was the difference between the before and after market value of the property.

Accordingly, the Court concludes that reverse condemnation is the landowner's sole remedy for encroachment by a utility, regardless of whether the utility is a governmental entity or private company with condemnation power. Plaintiffs' claims will be limited to an action in reverse condemnation only. The effect is to preclude recovery under theories of trespass or nuisance and to preclude recovery of any independent punitive damages. Thus the Plaintiffs are entitled to a single award based on the diminution in value of their property from the time of

the taking.

**B. Damages**

Defendant contends that if the Court treats Plaintiffs' claims as reverse condemnation claims, the Plaintiffs cannot satisfy the Court's jurisdictional requirement that the amount in controversy exceed $75,000.00 because Plaintiffs' maximum recoverable damages would only total $13,000.00. Under K.R.S. 416.660, compensable damages in condemnation cases are defined as "the difference between the fair market value of the landowner's property immediately before the taking and the fair market value of the landowner's remaining property immediately after the taking."

Defendant argues that Plaintiffs' claim for damages for the 10-inch water line (installed in 1971) is barred by the five year statute of limitation for bringing reverse condemnation claims (citing *Curlin v. Ashby*, 264 S.W.2d 671 (Ky. 1954) and *Jones v. Com., Transp. Cabinet*, 875 S.W.2d 892 (Ky. App. 1994)). Even if not barred, Defendant asserts that Plaintiffs' damages relating to the 10-inch line would be zero based on the opinion of Plaintiff's own expert witness, Larry Breeze, who opined that: "[t]he information I have at this point does not suggest that there is a substantial reduction in overall value to the property from the presence of the ten-inch line."

Defendant also argues that Plaintiffs' damage claim relating to the 6-inch water line (installed in 1969-1971) is time-barred. However, even if it is determined to actually be on Plaintiffs' property and that Defendant has to remove it because it is no longer being used, Defendant asserts that Plaintiffs' damage relating to the 6-inch line is the cost of removal ($10,000.00 as per Larry Breeze). Defendant reiterates that punitive damages are not recoverable in reverse condemnation cases.

Finally, Defendant argues that Plaintiffs' damage relating to the 8-inch water line would be limited to a total of $3,000.00 ($1000.00 per year) for the three years the 8-inch line was on their property (as per Larry Breeze) because, under K.R.S. 416.660(1), the proper measure of damages for a temporary easement is "the fair rental value" for the period of occupancy.

Defendant maintains that Plaintiffs' claims for loss of decayed building materials, increased costs of construction, and loss of rental profits from allegedly planned artisan shops are noncompensable losses, as are their claims for punitive damages, as per *Witbeck*. In sum, Defendant asserts that Plaintiff's maximum recoverable damages only total $13,000.00, which does not satisfy the $75,000.00 jurisdictional requirement.

The Court finds Defendant's application of *Witbeck* to be well taken with

regard to Plaintiff's claims for punitive damages as well as other noncompensable losses. The application of the doctrine of reverse condemnation forecloses any recovery beyond the value of the property taken. Plaintiffs' own expert witness has assessed the diminution in value of Plaintiffs' property. He states:

> "I have studied this property extensively. There are no comparables like this property that I can find. However, sales of other properties, my knowledge of real estate in the area, and my conception of how people would consider this long frontage, lead me to estimate the value to be $50,000 without the asbestos-cement line. I would use the estimate of the cost to have it removed (about $10,000) as the reduction in value due to its presence. So, with that line, I estimate the amount to be $40,000. The amount for the temporary placement of the eight-inch line on the Clemmers' property, whether we consider it as damage or rent, could be estimated as $1,000 per year at the old location. The information I have at this point does not suggest that there is a substantial reduction in overall value to the property from the presence of the ten-inch line."

Plaintiffs' FRCP 26(a)(2) Expert Report.

It is clear that Plaintiffs' own proof demonstrates a loss of value to the property equal to $13,000, well under the $75,000 jurisdictional amount required to confer diversity jurisdiction on this Court.

## III. CONCLUSION

Accordingly, the Court finds that Plaintiffs' trespass, nuisance, and punitive damage claims are precluded by the doctrine of reverse condemnation. Having made this determination, the Court declines to address the remaining grounds for

-13-

dismissal. Because Plaintiffs cannot meet the minimum jurisdictional amount requirement of § 1332(a), the Court is left with no choice but to Dismiss the instant matter for lack of subject matter jurisdiction.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

(1) the Defendant's Motion to Dismiss [Record No. 11] is **SUSTAINED**; and,

(2) a Judgment in favor of the Defendant shall issue contemporaneously herewith; and

(3) this matter is hereby dismissed and stricken from the active docket of this Court.

This February 23, 2006.

Signed By:
<u>Henry R Wilhoit Jr.</u>
United States District Judge